IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

KATHLEEN M. WILLIAMS,    :
             :
      Plaintiff,  :    CIVIL ACTION NO. 14-2345
             :
   v.        :
             :
WELLS FARGO BANK,    :
             :
      Defendant. :

## MEMORANDUM OPINION

Smith, J.                     April 9, 2015

    The plaintiff initiated this action against the defendant, her former employer, alleging that her termination as a bank teller violated the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621-634.  As revealed in the briefing and at oral argument, the theme of this case is that the defendant committed a behind-the-scenes "assault on [the plaintiff's] employment" because she had gotten too old.[1]  To get that theme to a jury, however, the plaintiff must respond to the instant motion for summary judgment with a showing that there is a genuine issue for trial. Because the plaintiff's version of the facts, which the court adopts as the operative record despite evidentiary shortcomings, cannot support such a showing, the court is constrained to grant the instant motion and enter judgment in favor of the defendant.

## I.   PROCEDURAL HISTORY

    The plaintiff, Kathleen M. Williams, commenced this action by filing a complaint on April 23, 2014, against the defendant, Wells Fargo Bank.  Doc. No. 1.  The defendant filed an answer to the complaint on June 3, 2014.  Doc. No. 3.  The defendant filed a motion for summary judgment, a supporting brief, a statement of material facts, and accompanying

---

[1] This theme is taken from the plaintiff's brief in opposition to the motion for summary judgment.  Pl.'s Br. in Opp'n to Def.'s Mot. for Summ. J. ("Opp'n to Summ. J.") at 19, Doc. No. 33.

evidentiary materials on December 22, 2014.  Doc. No. 20.  One day later, the plaintiff filed a motion to compel depositions or, in the alternative, to modify the controlling scheduling order. Doc. No. 21.  That same day, the court entered an order granting the motion in part and extending the deadlines to complete discovery and to file a response in opposition to the outstanding motion for summary judgment.  Doc. No. 22.  After a telephone conference with counsel, the court further extended the time for the plaintiff to file a response to February 13, 2015.  Doc. No. 27.  On that date, the plaintiff filed a counter-statement of facts and an index of documents used to oppose the motion for summary judgment.  Doc. Nos. 28-32.  Two days later, she filed a responsive brief.  Doc. No. 33.  The defendant filed a reply brief on February 20, 2015.  Doc. No. 34.  The court held oral argument on the motion on March 13, 2015.

## II.      DISCUSSION[2]

### A.      Factual Record[3]

The plaintiff was born on December 30, 1958.  Pl.'s Answer to Def.'s Statement of Undisputed Material Facts ("Pl.'s Answer") at ¶ 1, Doc. No. 32; Statement of Material Facts ("Def.'s Statement") at ¶ 1, Doc. No. 20-1.  The plaintiff began working as a bank teller for a

---

[2] The court has subject-matter jurisdiction over the ADEA claim pursuant to 28 U.S.C. § 1331.

[3] Taking seriously the proposition that the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor," the court adopts the plaintiff's version of the facts as set forth in her counter-statement of facts and, to the extent necessary to fill any lingering gaps, her accompanying affidavit.  *Dinote v. Danberg*, No. 14-3158, 2015 WL 451639, at *2 (3d Cir. Feb. 4, 2015) (internal quotation marks and citation omitted); *see* Doc. Nos. 28-1, 32.  The court takes this path despite the plaintiff's failure to support many of the factual assertions that appear in the counter-statement of facts with either citations to the record or a showing contemplated by Federal Rule of Civil Procedure 56(c)(1).  *See* Fed. R. Civ. P. 56(c)(1)(A) (stating that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record"); Fed. R. Civ. P. 56(c)(1)(B) (stating that "[a] party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact").  Unfortunately, and as explained later, this path is not always easy to follow because some of the assertions could not be reconciled with actual evidence even if they were accompanied by a citation.

As a further safeguard to the plaintiff, the court also conducted an independent review of the record to ensure that the plaintiff's version of the facts indeed cast the record in the light most favorable to her.  *See* Fed. R. Civ. P. 56(c)(3) (stating that a court "need consider only the cited materials, but it may consider other materials in the record.").

predecessor to the defendant in 1983.  Pl.'s Answer at ¶ 2; Def.'s Statement at ¶ 2.  From 1983 until 2004 or 2005, the plaintiff continued to work as a teller for a variety of different predecessor financial institutions.  Pl.'s Answer at ¶ 3; Def.'s Statement at ¶ 3; Aff. in Opp'n to Mot. for Summ. J. ("Aff.") at ¶ 5, Doc. No. 28-1.  In 2004 or 2005, the plaintiff began working for Wachovia Bank at a branch located in Coopersburg, Pennsylvania.  Pl.'s Answer at ¶ 4; Def.'s Statement at ¶ 4.  The defendant acquired Wachovia around 2007.  Pl.'s Answer at ¶ 5; Def.'s Statement at ¶ 5.  From that point on, the plaintiff continued to work as a teller for the defendant in Coopersburg until the date of her termination.  Pl.'s Answer at ¶¶ 6, 29; Def.'s Statement at ¶ 6.

As part of her job duties, the plaintiff handled cash transactions, served customers, addressed customer concerns, referred customers to bankers, and balanced the teller drawer. Pl.'s Answer at ¶ 7; Def.'s Statement at ¶ 7.  In particular, the defendant expected the plaintiff to look for customer opportunities and to make "referrals" to other employees with the goal of generating new business.  Aff. at ¶¶ 7-8.  The defendant took this referral scheme quite seriously as it instituted a quota system and allowed "team members to receive credit and any related compensation for legitimate sales to, or referrals of, relatives or friends."  *Id.* at ¶¶ 11, 14.

Phyllis A. Titus is the plaintiff's only sibling and she resides in Waxahachie, Texas.  *Id.* at ¶¶ 15-16.  Ms. Titus has two daughters named Larissa Ann Titus and Gabrielle Monque Titus. *Id.* at ¶ 17.  Due to the fact that Ms. Titus's husband died prematurely, the plaintiff and the sisters' mother were concerned about Ms. Titus's financial welfare.  *Id.* at ¶ 18.  In fact, the mother had a specific interest in creating "some type of trust" for Ms. Titus and her daughters and specifically asked the plaintiff to inquire into whether the defendant offered any bank products in that regard.  *Id.* at ¶ 19.  The plaintiff and Ms. Titus would have mutually benefitted

3

from any sale made as the plaintiff would have received credit against her quota and Ms. Titus would have been the beneficiary of the mother's generosity. *Id.* at ¶ 21. Relying on the defendant's policy concerning sales to relatives and friends, the plaintiff obtained specific authorization to begin making the relevant inquiries. *Id.* at ¶ 20. To the best of her knowledge, the plaintiff began making such inquiries in the summer of 2012. *Id.* At all relevant times, the plaintiff acted with Ms. Titus's explicit knowledge and consent. *Id.* at ¶ 22.

The defendant terminated the plaintiff on December 7, 2012, for violating the confidentiality policy found in its Team Member Handbook ("Handbook"). *Id.* at ¶ 31. The defendant has a Code of Ethics and Business Conduct ("Code") that is set forth in the Handbook. Pl.'s Answer at ¶ 19; Def.'s Statement at ¶ 19. The Handbook is distributed to employees upon hiring and is available to all employees on the defendant's intranet site. Pl.'s Answer at ¶ 19; Def.'s Statement at ¶ 19. The Code states that employees are obligated to protect confidential information about the defendant, its customers, team members, and vendors from unauthorized disclosure. Pl.'s Answer at ¶ 20; Def.'s Statement at ¶ 20. In relevant part, the Code provides that an employee "may not access confidential information without a business purpose." Aff. at Ex. C, 34. The Code applied to the plaintiff throughout the course of her employment and she understood that confidential information was limited to those with a business need-to-know. Pl.'s Answer at ¶ 22; Def.'s Statement at ¶ 22.

The proffered reason for the termination had its origin in an alleged complaint lodged by Ms. Titus in Texas. Aff. at ¶¶ 32-33. Specifically, the defendant's Human Resources Department claimed that Ms. Titus lodged a complaint on November 2, 2012, in a Texas branch over concerns with the plaintiff accessing her account. *Id.* at ¶¶ 32-33, 35. In turn, the Human Resources Department contacted an investigator, Scott Reeser, to begin an investigation. Pl.'s

Answer at ¶ 9; Def.'s Statement at ¶ 9.  Mr. Reeser conducted a minimal investigation and quickly determined that the plaintiff did not engage in any fraudulent activity.  Pl.'s Answer at ¶ 11.[4]  Mr. Reeser never spoke to Ms. Titus concerning the alleged complaint and possessed only hearsay information about the accessing of Ms. Titus's account.  Aff. at ¶ 38; Pl.'s Answer at ¶ 12.  Mr. Reeser then notified Marla Walczak, a supervisor who participated in terminating the plaintiff, and John Follette, an employee in the Human Resources Department, that the plaintiff had not engaged in fraudulent activity.  Pl.'s Answer at ¶ 17.  After talking to Mr. Reeser on the telephone, Ms. Walczak and Philip Sergi, the interim branch manager, terminated the plaintiff on December 7, 2012, for violating the Code.  *Id.* at ¶ 28; Aff. at ¶¶ 40-42.  The defendant did not consider progressive discipline.  Pl.'s Answer at ¶ 27.  In a note written on December 10, 2012, Mr. Reeser explained that although he found no evidence of fraudulent activity, the plaintiff's conduct was examined for compliance with company policy.  Aff. at ¶ 41.

In fact, however, Ms. Titus never lodged a complaint against the plaintiff and had authorized her actions.  *Id.* at ¶ 34; Pl.'s Answer at ¶¶ 10, 28.  Moreover, the plaintiff had a legitimate business reason for accessing Ms. Titus's account, namely that Ms. Titus was recently widowed with two children and her family desired to help her with her finances.  Pl.'s Answer at ¶¶ 14-15.  Consequently, the plaintiff never violated company policy and the defendant relied on an unwritten standard in firing her.  *Id.* at ¶¶ 23-24, 28.

As things stood on the date of her termination, the plaintiff, at fifty-four years old, was the oldest employee at the Coopersburg branch.  Aff. at ¶¶ 23, 42.  Prior to her termination, the

---

[4] As put into context later in this opinion, it is important to note that the plaintiff equates a finding that she did not engage in fraudulent activity with total exoneration.  *Id.* at ¶ 16.

defendant hired two younger employees, Pamela Englert (born in 1983) and Jennifer Kucheruck (born in 1981), on November 6, 2012. *Id.* at ¶ 34; Pl.'s Answer at ¶¶ 28, 32.[5]

### B.        Standard – Motion for Summary Judgment

A district court "shall grant summary judgment if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Additionally, "[s]ummary judgment is appropriate when 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"  *Wright v. Corning,* 679 F.3d 101, 105 (3d Cir. 2012) (quoting *Orsatti v. New Jersey State Police,* 71 F.3d 480, 482 (3d Cir. 1995)).  An issue of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Id.*

The party moving for summary judgment has the initial burden "of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).  Once the moving party has met this burden, the non-moving party must counter with "'specific facts showing that there is a genuine issue for trial.'"  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (citation omitted); *see* Fed. R. Civ. P. 56(c)(1) (stating that "[a] party asserting that a fact .

---

[5] As seen later, the plaintiff uses this fact in her attempt to make out a *prima facie* case of discrimination by arguing that it raises an inference that the defendant hired these employees as replacements in anticipation of her termination.  Opp'n to Summ. J. at 18-19.  Even though the court takes great care to ensure that the plaintiff receives the benefit of any evidentiary doubt, this replacement theory is ultimately rejected as unsupported by record evidence.

. . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the record . . .; or . . . [by] showing that the materials cited do not establish the absence . . . of a genuine dispute").

"The mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient." *Daniels v. School Dist. of Philadelphia*, 776 F.3d 181, 192 (3d Cir. 2015) (internal quotation marks and citation omitted).   Bare assertions, conclusory allegations, or suspicions are insufficient to defeat summary judgment.  *See Fireman's Ins. Co. v. DuFresne*, 676 F.2d 965, 969 (3d Cir. 1982) (indicating that a party opposing a motion for summary judgment may not "rely merely upon bare assertions, conclusory allegations or suspicions"); *Ridgewood Bd. of Educ. v. N.E. for M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (explaining that "speculation and conclusory allegations" do not satisfy non-moving party's duty to "set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor.").   Additionally, the non-moving party "cannot rely on unsupported allegations, but must go beyond pleadings and provide some evidence that would show that there exists a genuine issue for trial." *Jones v. United Parcel Serv.*, 214 F.3d 402, 407 (3d Cir. 2000). Moreover, arguments made in briefs "are not evidence and cannot by themselves create a factual dispute sufficient to defeat a summary judgment motion." *Jersey Cent. Power & Light Co. v. Township of Lacey*, 772 F.2d 1103, 1109-10 (3d Cir. 1985).

"When considering whether there exist genuine issues of material fact, the court is required to examine the evidence of record in the light most favorable to the party opposing summary judgment, and resolve all reasonable inferences in that party's favor." *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007) (citation omitted).  The court must decide "not whether . . . the evidence unmistakably favors one side or the other but whether a fair-minded jury could

return a verdict for the plaintiff on the evidence presented." *Anderson*, 477 U.S. at 252. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial'" and the court should grant summary judgment in favor of the moving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 587 (citation omitted).

## C.   <u>Analysis</u>

The ADEA provides that "[i]t shall be unlawful for an employer . . . to discharge any individual . . . because of such individual's age." 29 U.S.C. § 623(a)(1). Under this statute, a plaintiff advancing a disparate-treatment claim "must prove, by a preponderance of the evidence, that age was the 'but-for' cause of the challenged adverse employment action." *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 180 (2009). Because the plaintiff in this case has not provided direct evidence of discrimination, the court proceeds under the framework established in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973). *See Evanoski v. United Parcel Serv., Inc.*, 571 F. App'x 92, 95 (3d Cir. 2014) (observing that "[w]here an employee provides no direct evidence of discrimination, we apply the familiar three-step *McDonnell Douglas* analysis to the employee's claim under the ADEA" (footnote and citations omitted)).

> Under the *McDonnell Douglas* framework, the plaintiff bears the burdens of persuasion and production to establish a prima facie case of age discrimination. After the plaintiff satisfies this requirement, the burden of production, but not persuasion, shifts to the defendant to provide evidence of a legitimate non-discriminatory reason for the adverse employment action. If the defendant provides this evidence, the burden shifts back to the plaintiff to demonstrate that the defendant's justification was a pretext for discriminatory animus. The plaintiff always has the burden of persuasion.
>
> The plaintiff may demonstrate that the defendant's legitimate nondiscriminatory reason is pretextual by submitting evidence that allows a fact finder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a "but for" cause of the adverse employment action. Regardless of the method, the plaintiff's evidence must allow a reasonable jury to find, by a preponderance of the evidence, that age discrimination was a "but for" cause for the adverse employment action.

*Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (footnote and internal citations omitted).

Here, the defendant seeks summary judgment on the grounds that there is no triable issue of fact with respect to the plaintiff's ability to establish a *prima facie* case of discrimination and, should it be necessary to go further, to show pretext.  Def. Wells Fargo Bank, N.A.'s Mem. of Law in Supp. of its Mot. for Summ. J. ("Mot. for Summ. J.") at 3-4, 6-10, Doc. No. 20. Although the plaintiff disputes these points, she does not, and could not, argue that the defendant has failed to produce evidence of a legitimate non-discriminatory reason for her termination. Aff. at ¶ 31 (stating that she "was terminated for violating the confidentiality policy found in Wells Fargo's Team Member Handbook").  The court, therefore, confines the analysis to the two grounds articulated in the summary judgment motion.  As explained below, those grounds prove to be meritorious as a rational jury could not find for the plaintiff on her version of the facts, even presuming that there is actually evidence that would allow a jury to accept the entirety of that version in the first place.

### 1. The Plaintiff Cannot Make Out a *Prima Facie* Case of Age Discrimination

> To establish a prima facie case of age discrimination under the ADEA, the employee must show that (1) [she] is forty years of age or older; (2) the employer took an adverse action against [her]; (3) [she] was qualified for the position at issue; and (4) [she] was ultimately replaced by another employee who was sufficiently younger to support an inference of discriminatory animus.

*Evanoski*, 571 F. App'x at 95 (internal quotation marks and citation omitted).  It is true that "[t]he *prima facie* case method established in *McDonnell Douglas* was never intended to be rigid, mechanized, or ritualistic."  *United States Postal Serv. Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983) (internal quotation marks and citation omitted).  Instead, this method represents "a sensible, orderly way to evaluate the evidence in light of common experience as it

bears on the critical question of discrimination." *Id.* (internal quotation marks and citation omitted). No matter what type of evidence the plaintiff chooses to rely on, however, the constant is that any evidentiary showing must raise an inference of unlawful discrimination. *See Vasbinder v. Secretary Dep't of Veterans Affairs*, 487 F. App'x 746, 749 (3d Cir. 2012) (recharacterizing the fourth prong of an ADEA *prima facie* case as "(4) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination" (citations omitted)).

In this case, the plaintiff aims to establish a *prima facie* case by asserting that she was replaced by two substantially younger employees, namely Pamela Englert and Jennifer Kucheruck. Opp'n to Summ. J. at 18-19; Pl.'s Answer at ¶¶ 28, 32. Taken as true, this assertion would indeed establish a *prima facie* case and consequently shift the burden of production to the defendant to come forward with a legitimate reason for the termination.[6] While the court strives to adopt the plaintiff's version of the facts as the operative record, taking this specific assertion as true would unfortunately require the court to ignore the proposition that "[t]he non-moving party will not be able to withstand a motion for summary judgment merely by making allegations." *Wolf v. Tico Travel*, 527 F. App'x 135, 138 (3d Cir. 2013) (internal quotation marks and citation omitted). As the defendant recognizes in its reply brief, the fundamental problem with this assertion (besides the fact that it ends up being a legal argument) is that it is unsupported by record evidence. Def. Wells Fargo Bank, N.A.'s Reply Br. in Further Supp. of its Mot. for Summ. J. at 1, Doc. No. 34 (recognizing, as a general matter, that the plaintiff "fails to provide citation to the record to support her factual assertions").

---

[6] The defendant appears to contest the evidentiary underpinnings of only the final prong of the *prima facie* case. *See* Mot. for Summ. J. at 3-4.

The replacement issue appears two times in the plaintiff's counter-statement of facts. First, the plaintiff asserts in paragraph 28 that "Walczak and Sergi fired [her] on December 7, 2012, because they already replaced her with two younger employees as soon as the investigation began.   See attached Exhibit B, namely Pamela Englert, born 1983, hired November 6, 2012, and Jennifer Kucheruck, born 1981, hired November 6, 2012."  Pl.'s Answer at ¶ 28.  Second, the plaintiff states in paragraph 32 that "[she] was replaced by Pamela Englert, born 1983, and Jennifer Kucheruck, born 1981."   *Id.* at ¶ 32.   This latter statement is unaccompanied by any citation to the record.   Thus, the only citation to record evidence to support these assertions is Exhibit B of the plaintiff's affidavit.[7]

As to that exhibit, it appears to be an employee chart of some sort.  It lists the full name of the employee, the employee's identification number, a status code, a status group, a job title, cost center, a work address, the employee's birth date, an original hire date, a termination date, an action code, an action group, and an action reason description.  Aff. at Ex. B.  This is the sum total of the information contained in the exhibit.  Its evidentiary value must be measured by the full scale of substantive law.

Despite the seemingly fact-sensitive nature of employment discrimination cases, courts appear to adhere to the replacement prong of the *prima facie* case and, what is more, treat it as governed by legal standards beyond the *McDonnell Douglas* framework.[8]   In general, the Third Circuit has stated that "[t]he existence of a *prima facie* case of employment discrimination is a question of law that must be decided by the [c]ourt."   *Sarullo v. United States Postal Serv.*, 352

---

[7] Because there are no exhibits attached to the counter-statement of facts, the court presumes that the plaintiff is referencing the exhibits attached to the plaintiff's affidavit.  It is further noted that the affidavit itself does not supply the necessary support.  There, the plaintiff merely lists the ages of certain employees and states that "immediately prior to my firing, two young tellers were [h]ired in anticipation of my termination [Pamela Englert born 1[9][8]3 and hired November 6, 2012 and Jennifer Kucheruck born 1981 and hired November 6, 2012.]"  Aff. at ¶¶ 25-30, 34.

[8] This is why the court is constrained to disagree with the plaintiff's statement at oral argument that replacement is a pure question of fact.

F.3d 789, 797 (3d Cir. 2003).  The Sixth Circuit describes the law on replacement as follows: "[a] person is not replaced when another employee is assigned to perform the plaintiff's duties in addition to other duties, or when the work is redistributed among existing employees already performing related work."  *Love v. Electric Power Bd. of Chattanooga, EPB*, 392 F. App'x 405, 408 (6th Cir. 2010) (internal quotation marks and citation omitted).[9]  In particular, the Third Circuit has affirmed a grant of summary judgment when the district court held that a reasonable fact finder could not conclude, as a matter of law, that an older employee had been replaced by a younger one.  *See Hyland v. American Int'l Grp.*, 360 F. App'x 365, 367 (3d Cir. 2010) (affirming grant where the employer divided the plaintiff's responsibilities "among various employees, some older and some younger," the plaintiff performed different functions than the purported replacement, and the plaintiff received a different salary than the purported replacement).

Given this law, then, the plaintiff's replacement theory turns out to be unsupported because Exhibit B, without more, reveals nothing about job duties.  That is, there is no way to piece the information contained in Exhibit B together to figure out whether any employee performed the particular duties of any other employee.  Simply listing a job title is not good enough.  *See Hyland*, 360 F. App'x at 367 (recognizing a distinction between job titles and job duties).  It is left to pure guess-work to determine from that chart when, if ever, any employee performed the duties of another employee, much less if any of those employees performed the plaintiff's duties after her termination.  Under current law, however, this determination seems to

---

[9] To her credit, the plaintiff cites law from the Sixth Circuit with respect to the replacement prong.  Although the plaintiff takes this language from a paragraph explicitly discussing reduction-in-force cases, the following appears in the plaintiff's brief in opposition to the motion for summary judgment: "[a]n employer replaces a discharged employee when it reassigns an existing employee to assume the discharged employee's duties in a way that fundamentally change[s] the nature of his employment."  Opp'n to Summ. J. at 13 (citing *Pierson v. Quad/Graphics Printing Corp.*, 749 F.3d 530, 537 (6th Cir. 2014) (internal quotation marks and citation omitted)).

be precisely what is required to evaluate whether a plaintiff has established a *prima facie* case in the traditional manner.[10]   The plaintiff's theory is thus reduced to mere speculation, which is insufficient to defeat summary judgment.   *In re Asbestos Prods. Liab. Litig. (No. V)*, 578 F. App'x 160, 162 (3d Cir. 2014) (stating that "[w]hile all reasonable inferences must be drawn in favor of the nonmoving party, an inference based upon a speculation or conjecture does not create a material factual dispute sufficient to defeat summary judgment." (internal quotation marks and citation omitted)).

On a final note, this evidentiary defect need not be fatal to the plaintiff's *prima facie* case if she could marshal any other evidence, in any form, that could support an inference of discrimination.   She has not and, on this record, cannot.   As the remainder of the plaintiff's arguments are devoted to pretext, the court will address those as well.

### 2.     The Plaintiff Cannot Prove Pretext

Even presuming that the plaintiff has established a *prima facie* case, whether through a replacement theory or otherwise, she still cannot make out a genuine issue for trial because she cannot prove that the defendant's proffered reason for terminating her was pretextual.   As previously stated, to prove pretext a plaintiff must submit evidence "that allows a fact finder to either 1) disbelieve or discredit the employer's justification; or 2) believe discrimination was more likely than not a 'but for' cause of the adverse employment action."   *Abels v. DISH Network Serv., LLC*, 507 F. App'x 179, 183 (3d Cir. 2012) (citations omitted).   "The plaintiff's evidence, if it relates to the credibility of the employer's proffered justification, must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could

---

[10] Again, "[i]n determining whether or not an employee has been replaced, we consider the employee's position *and responsibilities*, and whether those features of the job were clearly defined." *Phillips v. Aaron Rents, Inc.*, 262 F. App'x 202, 209 (11th Cir. 2008) (emphasis added) (citation omitted).

rationally find them unworthy of credence." *Burton v. Teleflex Inc.*, 707 F.3d 417, 427 (3d Cir. 2013) (internal quotation marks and citation omitted).  "[I]f a plaintiff has come forward with sufficient evidence to allow a finder of fact to discredit the employer's proffered justification, she need not present additional evidence of discrimination beyond her prima facie case to survive summary judgment." *Id.* (citations omitted).

With that said, "[p]retext is not shown by evidence that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." *Ekhato v. Rite Aid Corp.*, 529 F. App'x 152, 155 (3d Cir. 2013) (internal quotation marks and citation omitted). "Evidence that the method of evaluation an employer used was not the best method does not amount to evidence that the method was so implausible, inconsistent, incoherent or contradictory that it must be a pretext for something else." *Id.* (footnote, internal quotation marks, and citation omitted).

To survive summary judgment in this case, the plaintiff must make an evidentiary showing that raises an inference that the true reason behind her termination was age discrimination, not a violation of company policy.  The plaintiff tries to show pretext by arguing the following: (1) the defendant conducted a minimal investigation regarding her conduct; (2) the defendant exonerated her; (3) Ms. Titus never lodged a complaint against her; (4) she had a legitimate business reason for accessing Ms. Titus's account; (5) Ms. Titus authorized her actions at all times; (6) the defendant relied on an unwritten standard in terminating her; (7) the defendant gave inconsistent reasons for the termination; and (8) the defendant did not consider progressive discipline.  Opp'n to Summ. J. at 18-21.

To see why all of these reasons fail to prove pretext because they add up to nothing more than an attack on the correctness of the defendant's employment decision, the court must discuss three of them separately—the rest speak for themselves.  One of the reasons given is that the defendant exonerated the plaintiff.  As previously discussed, however, Mr. Reeser determined only that the plaintiff did not engage in fraudulent conduct.  The record evidence, as provided by the plaintiff herself, shows that the investigation was then turned over to another department to determine whether she had breached company policy.  On the plaintiff's own version of the facts, it is simply inaccurate to equate total exoneration with a failure to perpetrate fraud.  This inaccuracy, in turn, leads to a second reason given, namely that the defendant gave inconsistent reasons for the termination.  Again, inconsistency arises only if one fails to distinguish between fraudulent activity and company policy.[11]  When that distinction, a distinction that an employer is entitled to make, is properly understood, there are no contradictions or inconsistencies.  And the plaintiff points to no other evidence to show any.  Finally, the plaintiff points to the lack of progressive discipline.  For this to serve as evidence of pretext, the plaintiff must show that a progressive disciplinary policy is "mandatory or rigorously followed."  *Emmett v. Kwik Lok Corp.*, 528 F. App'x 257, 262 (3d Cir. 2013) (citations omitted).  The plaintiff fails to show either.[12]

In sum, while the plaintiff may have shown that the defendant's reason for her termination was incorrect or harsh, she has not produced any evidence suggesting that the

---

[11] The plaintiff states that "[i]t started with the bogus claim that her sister filed a complaint about her.  The investigation was then based on fraudulent activity.  Then it was claimed that she breached her sister's privacy.  It then went to accessing the information without a legitimate business reason."  Opp'n to Summ. J. at 18.

[12] In her counter-statement of facts, the plaintiff states that the defendant "did not even consider progressive discipline."  Pl.'s Answer at ¶ 27.  The plaintiff then cites to the Handbook at pages 105 and 106.  *Id.*  While progressive discipline is surely authorized by the Handbook, the defendant unquestionably has the power to terminate an employee without prior corrective action.  *See* Ex. 8 at 106, Doc. No. 31-1 (stating that "[e]mployment can also be terminated . . . if the problem involves a breach of policy, *including a violation of the Code of Ethics and Business Conduct*" (emphasis added)).

defendant was not honestly motivated by it.  In other words, the plaintiff has not raised an inference that the true reason behind her termination was a discriminatory one.  Because the law is concerned with discriminatory results, not results that are merely incorrect or harsh, the plaintiff cannot make out a genuine issue for trial.

### III.    CONCLUSION

Summary judgment is to be applied with "added rigor in employment discrimination cases, where intent and credibility are crucial issues."  *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 212 (3d Cir. 2011) (internal quotation marks and citation omitted).  But no amount of rigor can save a case that lacks a triable issue even if a jury were to credit the plaintiff's version of the facts.  Confronted with the plaintiff's version in this matter, no reasonable jury could infer that the defendant had discriminated against her.  And this is presuming that there is evidence supporting each part of the plaintiff's version in the first place. The court, therefore, is reluctantly compelled to grant the defendant's motion for summary judgment.

An appropriate order follows.

BY THE COURT:


/s/ *Edward G. Smith*
EDWARD G. SMITH, J.